Good morning, your honors. May it please the court. Tom Walsh for Bank of America. This case began as a fairly routine collection matter, but turned into something quite different and frankly quite bizarre as a result of the district judge's failure to apply traditional principles of contract law. We think the proper resolution of point one in our brief will moot some of the later issues that are peculiar to jury trials, so I'd like to start by discussing that, and that is the jury trial waiver issue. There's a history of financial transactions between parties, the Bank of America on one side and the other. Now that would just be a new trial issue, right? Well, I think in large part, but I think also I'm going to ask the court to rule as a matter of law whether Well, I know, but you said you thought that practically ends the case, but I thought it just Well, it moots some of the jury trial issues, that's what I said. There are actually nine transactions involved in this particular case, nine documents, including loans, swaps, and guarantees. All nine of those instruments were signed by Bert Hanna, who is the Hanna organization, Hanna-Candle, J.B. Hanna, and Curzon. They're his companies. He's the sole shareholder, along with a couple of trusts for his children, as I understand it. He signed those documents with the advice of two of the best law firms in Arkansas, with the advice of his in-house CPA and MBA and financial consultants. Hanna himself is a sophisticated multimillionaire entrepreneur who's been very successful in the Fayetteville business community. Seven of those documents had expressed jury waiver provisions. Unambiguous, which said that the parties agreed that any dispute would not be submitted to a jury, but would be resolved either by arbitration or on a non-jury basis. And they all had cross-default provisions. Default in one would produce default in the others. When the case was filed, the defendant, Hanna Interest, moved for a jury trial, and the bank moved to strike the jury demand. Bert Hanna, at that point, filed an affidavit saying that he didn't realize that all those documents he signed had jury waiver provisions in them. He didn't read them. He didn't have advice of counsel, couldn't negotiate them, and therefore they shouldn't be binding on him. Well, the trial judge wasn't having any of that. But because two of the documents, namely the 2001 loan and the 2005 loan instruments, did not have jury waiver provisions, the court decided that the case should go to the jury anyway. But in the 2001 loan, it was guaranteed by Hanna personally. And the guarantee that he signed said that it waived a jury trial for any dispute arising under any related documents executed in connection therewith. Were you able to find a case where a guarantor waived the right to jury trial, but it was not waived in the underlying loan, and the creditor sued both the debtor and the guarantor? No. No. But here, where you have the same individual who's basically the loan beneficiary. I understand. I mean, in the second loan, in 2005, the loan was for the benefit of Mr. Hanna personally because it enabled him to fund the $16 million divorce settlement with his wife. So although the loan was technically made to J.B. Hanna, the money went to Bert Hanna, who had, as a guarantor, indicated that the loan wouldn't have been granted without his guarantee, and indicated that he was the beneficiary, and he, in the guarantee, waived the jury trial. So the district court said that it was going to conduct a jury trial. We asked him to certify that ruling at that point, which we thought would have saved a lot of time and trouble, and we thought he was wrong. He said, no, I'm not going to certify it, but I will listen to the evidence. And if I'm wrong and if the court of appeals tells me that it should have been a non-jury trial, I'll issue findings and conclusions based on my own analysis of the evidence. So in our view, it should go back to him with this court's instructions on whether there's a submissible case or not, or whether there's a submissible defense or not, that is. In either way, we think that the court should decide that we were entitled to judgment as a matter of law. If it was properly a jury case, there's the Rule 50 issue, which we think we've fully briefed and which we think the court fully understood, because at the conclusion of all the evidence, he said, well, now I've listened to all the evidence, I don't know what I'm going to ask the jury to do. He said, there is no case. The defendants have no defense. The documents are unambiguous. The parole evidence should not have been admitted. There's no fiduciary duty. The contracts are clear. There are two separate transactions, not one. The defendants don't have a case and, oh, by the way, I should have granted summary judgment. And yet, despite that soliloquy that he engaged in right at the conclusion of the evidence, he twice said, well, but I'm not going to direct a verdict. I'm not going to issue judgment as a matter of law because I might get reversed. So I'll let the jury decide. But he did identify remaining issues, right? He identified defenses that he was. No, whether defendants defaulted, whether the plaintiff properly declared default, and damages. He'd already ruled on that in summary judgment. That's contrary to what he had previously said, but there's no issue. I thought he said that after, I mean, in the context of this ruling. He did, but that's not what he submitted. I mean, he submitted waiver, for instance, which is the contract specifically said that failure to enforce a default at one time does not constitute a waiver of the right to enforce it later. Acceptance of payments after they defaulted on the payment of the 2005 loan does not constitute a waiver of the right to enforce that default. And that waiver was one of the defenses that he submitted. And we submit as a matter of law, not just fact, but law, that that was improperly submitted. And so Rule 50 doesn't even really apply to that. The same with the duty to mitigate. Mitigation of damages is not an issue in a contract case. And yet, he allowed them to submit mitigation in a very poorly worded instruction. And so in closing, the defendants argued that we should have accelerated the swap quicker upon default. And by not doing, we failed to mitigate. I mean, the agreement said that it was discretionary with the bank as to whether and when to terminate a swap that had gone into default. All these instructions were objected to both substantively and as a matter of law, as a matter of fact, and also as a matter of form because they were improperly formulated. And then he also submitted good faith and fair dealing. And then permitted the defendants in argument to basically ask for nullification of the contract because we weren't fair with them. The bank emphasized paper over people and insisted on getting paid even though it wasn't fair to do so. So they basically obliterated the contract and argued that fair dealing basically supplemented or supplanted whatever rights and obligations we had under the paper. Defense counsel said the jurors found no breach. I don't know if there was a special verdict. Yes, there was. The jurors found no breach of any of these documents. And yet it was perfectly clear that when the loan matured in 2005, they didn't pay the balloon. And there's no question about the fact that that was the obligation. And that triggered default on all the other transactions. But what about the issues the trial judge said were still there? Well, he had previously said in the jury judgment. So there has to be no evidence of those plus? There wasn't any evidence. But their only argument was that, as they pleaded it, that there was fraud of some sort because the loan had a five-year maturity and the swap had a ten-year maturity. Well, the judge got rid of that in a hurry, saying all you had to do was look at the two documents and you would see that they had different maturities. And they never raised any of that until after they went into default. They received 60 statements over the period of five years showing the maturity of each of those documents. And not until they went into default and consulted the lawyer did they first say that they had been misled. And that was the only argument they had for why there wasn't a breach. They even say in their brief that the basic argument is that there was no breach of the 2005 loan because it wasn't due until 2015. Well, that's contrary to what it says right on its face. It's totally unambiguous that it was a five-year loan and that upon the reaching of the fifth anniversary, they had an obligation to pay off the balance. Now, they thought they were going to get it renewed, I guess, but their financial condition had deteriorated in the meantime to the point where the bank wasn't willing to renew them except for one more year, which they turned down. Well, why doesn't Rule 50A and Unitherm catch you on this issue of whether there was sufficient evidence for the jury to find breach and proper declaration of default? Well, Unitherm really only applies to 50B, I think. I don't think Unitherm said anything about 50A. Well, I'm talking about pediatrics and how it discussed Unitherm and Rule 50A and said you've got no sufficiency argument if you didn't make the Rule 50A motion. Well, and the question is whether in context the court understood what was being requested, namely judgment as a matter of law, take away their defenses. Well, that wasn't the ruling in pediatrics. Pediatrics said the final judgment brings forward everything that happened before, including the 12B6 motion that was ruled on. It also said that the colloquy between the judge and the lawyers can flesh out what's really being discussed. The judge said twice, I'm not going to issue judgment as a matter of law. But I didn't see any colloquy where it was argued that there was insufficient evidence to submit the issues the trial court said were still there after its, for you, favorable ruling. Well, he said that I'm going to submit these four defenses. We contradicted every one of them and said they're not defenses. That's what he ended up submitting, regardless of what he said before. Well, that's not what the jury found. The jury found no breach, which he said was an issue that survived his favorable ruling. Which he had thrown out, basically, when he granted summary judgment. He said they don't have a claim for breach of contract, but they have a defense that we breached the contract. That apparently was the basis for the jury's determination. Well, how do you know what the basis was for the jury's determination? What exactly did the verdict form say? It said, did ex-defendant breach or default on guarantee the loan to swap? Yes or no, and they said no. So can you tell whether they did that based on waiver or breach by the bank, or it's a general verdict? Can't really, yes. But no matter what the basis was, it's our position that it was legally insufficient and inappropriate and wrong as a matter of law to allow them to determine that. Well, that's where 50A comes in if you didn't make the motion, or if your argument about why you didn't need to make a motion is unavailing. Well, except I would say that to the extent that you object to instructions on the grounds that that's not a legal defense to what is being asserted, namely, in this case, waiver or failure to mitigate, those aren't legal defenses. That's not a sufficiency of the evidence argument as such. That's really an argument that it's improper as a matter of law, and Rule 50 doesn't apply to that. Right, it doesn't apply to the instruction objections, but it applies to your argument for a directed verdict. Right, but he said in considering the instructions, he says, well, I can't do that, otherwise I'd throw the plaintiffs out, and I'm not going to do that. So is it your position that if any of the instructions was bad, then, I mean, assuming we don't accept the argument on directed verdict, that any bad instruction warrants a new trial? Yes. And why would that be? Why? Well, because he allowed the jury to consider matters that were just inappropriate. Yeah, but if there's insufficient evidence, wouldn't the jury have ignored it? Well, it's our position it's more than that. I mean, waiver is not a sufficiency of the evidence. It's that, too, but it's also where the document says this shall not constitute a waiver. It's just a legal flaw, you say? That's absolutely correct, yes. What about good faith and fair dealing? You brought that up. I thought the lawyer for the bank ended up saying we agree. Yes, he did. It's a little more your reply brief says, well, we just failed to object, but he says we agree it should be included. Isn't that pretty clear invited error? Well, it requires a plain error finding, I think, but what happened in the Well, I meant invited error. No, I don't think we invited it. They suggested it. We objected. Well, we were well persuaded by Mr. Brooks, he says, and we would ask that both parties agree it should be included. Well, that's an acquiescence. I don't know if that's an invitation. All right. But what they made, the use they made of that was outrageous. Now, you've made all these rulings that parole evidence shouldn't apply, that there's no fiduciary duty, et cetera, et cetera. Are you going to instruct them not to argue all that? He said, oh, no. He said, I'm going to let them argue anything they want to. So they used good faith and fair dealing, basically, and even mentioned nullification in what he was authorizing them to do. And they argued for an hour about why this contract didn't mean anything and why the bank were bad guys and shouldn't have any right to enforce the rights that everybody had agreed to. So I'd like to reserve the rest of my time. Thank you. Mr. Mitchell. Good morning, Your Honors. It's been a long time since I've had the pleasure to argue before this court. I appreciate your invitation very much. I suppose I would like to start in the middle, where it seems that most of the conversation between Mr. Walsh and you focused, that being the challenge by the bank to the sufficiency of the evidence at trial, and particularly as how that relates to Rule 50. It seems clear to us in our reading of the cases, many of which you and your colleagues penned, that it is Rule 50, particularly 50A, that is the date. Well, your citation to Ortiz and Lopez are just way off. They aren't on the reservation. Those cases have nothing to do with Rule 50A. So you're not starting off very strongly with talking about the cases you cited. Well, we cite also Walsh, Your Honor, and agree that Walsh is a case that you can refer to and take all the instruction that the court would need as to what the law is. What about pediatrics? Pediatrics looks to me like it's very, very close. Well, Your Honor, we believe that the gate through which you must pass as a party to have the court review and appeal the sufficiency of the evidence is Rule 50A. Wait a minute. They're not only attacking sufficiency of the evidence. They're attacking a pretrial error of law, just like pediatrics. Well, the motion — I mean, why can't they do that? They bring a motion for summary judgment. The court says summary judgment partially granted, but full summary judgment denied. Why can't you — that's not an appealable interlocutory order. Why can't they bring it up after there's final judgment? That's clear in pediatrics and other cases. Studica and Andrasek said that a summary judgment, and the Supreme Court's pass on this, is not a substitute for a Rule 50A motion at trial. If it's sufficiency directed. But this is not. We believe that this is a challenge to the sufficiency of the evidence. Well, okay. So we'll have to — why? Why isn't it an attack on parole evidence? And, I mean, after all, a contract — the interpretation of a contract is an issue of law for the court. It is, Your Honor. If the court says it's ambiguous, now it has to deal with extrinsic evidence. If the court should say it's unambiguous, then the court must rule. Those are — The court refused to rule. Why isn't that an appealable pretrial legal error? We believe that that is a part of what the bank raises for this court to review. Okay, so now that's — But it's a challenge. So you agree that's not 50A barred? I do, I do. Okay. But the challenge — Now we're pretty close to the same page. The first challenge that the bank makes is that the court should have entered judgment as a matter of law, and it gives a laundry list of reasons that — and substitutes for their motion for judgment as a matter of law that this court should consider. And to me, you know, the trial law 101, much like the introduction of a document into evidence, is that while you might hold that document in your hand and you might talk about it to the judge and the judge might be aware of the fact that you have fought over that document in discovery and you might have even allowed the judge to know that the document is central to you sustaining your case and your burden. But nevertheless, it is incumbent upon you to offer the document into evidence. That is a rule that we play by every day, and that that document be received into evidence before the jury consider it. In this case, we believe very analogous to that is that it is incumbent upon the bank to make a motion for judgment as a matter of law under Rule 58 before this court can review the sufficiency of the evidence. Now, it is — What about a new trial under Rule 59? Do you see any bar to a new trial if the court feels that the evidence was insufficient but can't reach judgment of notwithstanding a verdict? Well, I think to understand why the motion for new trials should fail is to understand what the evidence was. But — No, I was asking a legal question. Yeah. Whether there's any barrier if the court thinks the evidence was insufficient but can't reach that under Rule 50B, is there any legal barrier to granting a new trial under Rule 59 on account of the 50A problem? I'm just asking that as a legal question. I understand your view on the evidence. Yes, sir. If the motion for new trial is predicated on an insufficiency of the evidence, then, yes, there is a legal barrier. And what's the authority for that? Yeah. What says you have to file a Rule 50A motion to get a new trial? The gateway through which you can have a pellet review of the sufficiency of the evidence is Rule 50 and Rule 58. Well, do we need to get out Rule 59? Rule 59 has no reference. But Rule 59 is contemplated in Rule 50. So you say pediatrics on this issue is wrong and we should go into conflict. Pediatrics clearly says that Rule 59 allows a new trial motion on any reason that historically has been viable. We believe that if there's a challenge to the sufficiency of the evidence, then the new trial should be held in the same standard. A new trial motion virtually, I guess not the instruction argument, but against the weight of the evidence is a component of every Rule 59 motion I've ever seen. You're saying that despite pediatrics, that's barred if there wasn't Rule 58 preservation? We believe that to challenge the sufficiency of the evidence under a new trial motion, there must have been a motion under 58. And the appellate case you rely on? Well, Your Honor, I'm going to have to rely on the cases that we cited in our brief. Did any of them address Rule 59? From memory, I mean. I can't tell you from memory.  But if we are addressing the sufficiency of the evidence, and if you were to conclude that somehow the bank had preserved its appeal issue with respect to sufficiency of the evidence, then I think we need to look at the record and see what the evidence that the court had before it was. We know from Judge Miller, not just made by the bank of his having thrown out defenses and his having commented on the evidence, he did express his thoughts at the court. He said he should have granted summary judgment. He said if the evidence were as it came out, if he knew it was going to come out as it did, he would have granted summary judgment. Didn't he say that? He said a lot of things, Judge, to be honest. Well, isn't that one of them? And he confirmed them with a ruling, though. Part of what he said was I think that we have three issues. Did the HANA entities actually default? Did Bank of America properly declare the entities to be in default? I think that's an issue. And third, if they defaulted and were properly declared in default, what are the bank's damages? Now, to better understand the significance of that, I think we need to look and see what the jury was asked to consider. Because Judge Miller said I'm not going to say that a reasonable juror couldn't find that there hasn't been a default because that's for the parties to argue. And so in our brief, we cited the court to numerous points in the transcript and in the trial where you can look to find evidence that the jury could make a determination and sustain its verdict on the basis or for HANA without necessity to rely on parole evidence or any of the affirmative defenses that the judge threw out at the close of trial. I looked at your bullets in your brief, pages 35 to 37. They all seem to me to be affirmative defense bullets. Well, Your Honor, if I might disagree, on page 37, the bullets... Oh, the not in default intangible network requirement. No, sir. Page 36, the important bullets that I'd like to expand on for the court today at the bottom that even after the declaration of default, J.B. HANA continued to make timely monthly note payments on all three notes. That's your waiver record. No, sir, it's not, and I'll explain why. Then on page 37, on May the 12th, HANA sold its manufacturing facility and paid 100% of the net proceeds, nearly some $9 million to the bank. And the bank was, in effect, made whole by the application of those proceeds after the sale. Now, to understand why we put that in, if I might expand, the court should turn its attention to the instructions with respect to breach that were offered by the bank over our objection, frankly. But, for instance, the court's instruction number nine, which required that Bank of America or told the jury Bank of America claims that HANA breached the 2005 promissory note and 2005 loan agreement, those being the $11.2 million loan agreement that was the predicate for all the claims that the bank brought against my clients. The court told the jury, and the bank invited this, that the burden of proving each of three essential propositions is yours. First, that there was a promissory note and loan agreement. Second, that HANA breached the 2005 promissory note. And third, that Bank of America suffered damages as a result. Damages was not something that the jury considered after the fact. on its claims against HANA for breach. Now, why is that important? That's important because, as you turn to the record, we see that Mr. Molinaro conceded at the close of evidence that we, HANA, could certainly argue at closing that the bank should not be awarded their full damage if they're reserving their right to do that. We've established damages, or at least we have evidence of damages. Now, why would he say that? The reason is, and this was one of the three things that they had to prove to sustain their claim for breach. Mr. Molinaro, through Ms. Freeman, it was determined, which was a witness for HANA, that since the declaration of default, HANA had paid more than $1.4 million to the bank in regular payments on the servicing of its loans. And that, as in May of 2012, about a month before the jury trial began, HANA paid to the bank, well, $8.75 million that the bank applied to the loans. Mr. Hammond, who was the bank officer who declared default against HANA, testified in his direct examination, this was testimony elicited from Mr. Molinaro, that with respect to the Armstrong facility, it was sold, and that application of some $8.7 million roundabouts, according to Mr. Hammond, was applied to the HANA debt. The significance on that at page 249 of the transcript, testimony again elicited from Mr. Molinaro, from Mr. Hammond by Mr. Molinaro, was that $7.393 million was applied to the HANA note before trial. Now on that day... So what's your point, that there was no damage to the bank from the breach? Were those proceeds applied to reduce the principal balance to zero as of that date? Mr. Hammond's answer, that is correct. But they sued for $12.2 million, right? I beg your pardon? They sued for $12.2 million. They sued for breach of the note, and they asked for damages that exceeded $12 million. But the testimony from Mr. Hammond was... Well, breach of multiple obligations. Yes, sir. True. So are you saying anything more than there was no damage, that one of the notes or something less than all the notes was fully repaid by these proceeds of closures? Well, interestingly, for the jury to find that HANA breached, the instruction was that it must find that the bank had been damaged. Mr. Hammond testified that there was a zero balance on the 2005 note as of the date of trial. The bank offered evidence by way of its Exhibit 24 that the balance on the $11.2 million loan as of May 1st was zero and that no interest was owed. That was the bank's calculation after having applied default interest since October of 2010 to that loan. And so the jury had before it that the balance on the remaining J.B. HANA loan was some small amount, let's say $30,000, with maybe $100 or thereabouts in accrued interest. But that amount was the remaining balance on the J.B. HANA loan after the application of default interest had been applied to the larger $11.2 million loan. However, if the jury was instructed that in order to find a breach and default on the $11.2 million loan, it must first find damages, one of the three essential propositions it must find, then there was no breach of the $11.2 million loan and default interest was entirely inappropriate to having been applied to that. So we believe there was evidence from which the jury could find that the bank had not been damaging the interest. But these proceeds came after the default, right? So we're talking no unpaid balance of the loan as of the time of trial but not as of the date of default? I don't understand this. The jury was not asked to ascertain damage as of a particular date. The jury was only asked to ascertain damages. The bank gave the jury evidence that it had no damages with respect to the $11.2 million loan. Okay. But what about the other loans and the other fees and the other, you know? If the bank had no damages with respect to the $11.2 million loan, there was no breach by the instruction and based on the evidence the jury had. No entitlement to $100,000 per month of default interest versus $10,000 per month interest that would have normally occurred. I thought the first default triggered the other defaults, right? That's what the bank claims. So you're saying that if there was a default on day one and the bank under the agreements is allowed to trigger the cross defaults, if the borrower makes good on the first loan later, then they've got to withdraw the other cross defaults? If the bank did not prove what it was required to prove with respect to a breach, its instruction, not ours, then the jury could find that there was no default and breach, which is what the jury found. Didn't the instruction say they had to show that there was damage as of the time of the default? The instruction did not. If I can go back to the instruction. Third, that Bank of America suffered damages as a result. Why didn't they suffer damages as a result of your client's failure to pay the other obligations that were defaulted as a result of the original default? They could certainly argue that they did, but they introduced evidence to the jury that they had none. That they had none? No damages. Zero balance, no interest, no damages with respect to the loan. On all of the loans or just on the first? The evidence that they submitted to the jury that went in through Mr. Hammond as a witness was that they had no damages with respect to the $11.2 million predicate loan that sponsored their claims against my client. What about the Curzon borrowings? Well, the Curzon, they submitted damages on Curzon. But, back to your question, Judge Colleton, how do we know how the jury decided? I mean, there was also evidence in the record that the Curzon loan was not in default. There was evidence of waiver in the record. That a provision in the Curzon loan was that my clients were in breach of that provision on the day before the ink dried on the contract. And yet that provision was looked at with a wink and a nod the entire time. That if a different interpretation less favored by the bank was given to a provision in the Curzon loan, then there was no default of the tangible net worth requirement that the provision addressed. The jury had evidence from which it could find that there was no default on the Curzon loan. How do we know? How do we know whether it was good faith and fair dealing that the jury based its decision on? My point is that there was evidence that the bank had no damages and the bank had a failure of proof with respect to its essential proposition that it proved damages with respect to at a minimum the large loan, but we believe also with the other J.B. Hanna loan. It had a problem with its proof that there was a breach of the Curzon loan. It had a problem with the fact that there was evidence before the jury, the instruction invited by the bank clearly, as to its breach of the duty of good faith and fair dealing, where there was evidence that Mr. Hammond had made a decision in 2009 to out my client, which means that the bank no longer, his testimony, wanted my client's business in the bank, but nevertheless led my client to believe that he thereafter negotiated in good faith for the refinancing of that debt. Clearly that's a breach, arguably, but we believe clearly it's a breach of the duty of good faith and fair dealing. Thereafter requiring a release of any claims that I can't imagine there's a case to that effect this side of Montana. Well, I don't have a case to cite you to, Your Honor. Well, I know because banks make a decision to get out of credits all the time and they don't have a fiduciary duty to preserve a banking relationship. They have a contractual duty to do it right, to extricate themselves from the credit correctly, right? But when you undertake, after determining to get rid of a customer, to lead that customer to believe that you're negotiating in good faith for the refinancing of debt and then change the terms of the refinancing, which was before the jury, from what was agreed on orally to what was agreed on in writing, then we believe that that is a breach of the duty of good faith and fair dealing. Now you're talking 2005 or 2009? That was a decision made to out in 2009. The debt was entered in 2005. Post-default? No, pre-default, Your Honor. Default was declared October 10, 2013. Okay. 2013? No, wait. 2010, pardon me. Default declared October 10, or October 13, 2010. The jury was also instructed about determining whether or not there was a breach of the swap agreements. What we know about the instruction with respect to the swaps is that the bank had the burden of proving each of four propositions. The first, that there was a swap. The second, that Hanna failed to make monthly payments and to comply with, not breach the loan agreement. Third, that Bank of America did what the contract required of it. And fourth, by failing to pay Bank of America monthly payments, that Hanna was in default. Now the third and fourth elements of proof were not talked about much by the bank, but they were essential propositions necessary to prove a default by Hanna on the swap agreement. The jury had evidence before it that the bank did not comply with its enforcement of the swap contract when it declared a default on the swaps and accelerated all indebtedness by its letter to my clients on October 13, 2010. And nevertheless, asked the jury to award it damages for Hanna's having thereafter failed to make monthly payments. I mean, there's clearly evidence that the jury could, that the jury had before it to understand or to determine that the bank had not done what the contract required of it. Also, I'm sorry. Well, wrap it up. It's a complicated case. It is a complicated case, Your Honor, and that's the challenge that we face. Twenty minutes. I mean, there are 200 issues that all deserve 20 minutes each in this case. I hate it that I have not focused on the jury trial issue either, but we're fighting with a short stick, so to speak. Well, it's in the briefs, and it's been well briefed. Thank you, Judge. Thank you. Mr. Walsh, you have some time? Four and a half minutes. I think that pretty well explains why the bank insists on jury trial waivers in cases like this. Except on the 05 loan they didn't insist. Right, but in the other documents. I mean, you know, this is stuff not for the typical jury, and obviously this jury was confused by a lot of extraneous matters that it should not have considered. But I'm shocked to hear this morning the statement that the witness for the bank admitted that there was no damage. That's not in any brief I've ever seen from them, and there's no basis in the record for that statement. Mr. Hammond did not admit that the bank had no damage. The bank had a lot of damage as a result of the admitted failure of the Hanna Group to make the payment in 2010 that was due on the note, which triggered the cross-default provisions in all these other documents and created a loss of upwards of $12 million. The sale of the property netted about $8 million, but still left about $4 million that was not accounted for. And the jury didn't make any finding that there wasn't any damage. The jury made a finding that there wasn't any breach. But that, as we have briefed and said here today, there's just no justification for that. Burt Hanna admitted they didn't make the payment in 2010. That's all there is to it. I mean, the payment was due. They say they didn't think it was a five-year note. They thought it was a ten-year note. The judge threw that out in a hurry. He said, read the note. Judge Coulton, you asked about whether there's any required predicate for a Rule 59e motion. Wright and Miller says that a new trial motion may allow a party who is entitled to JAML, but who has failed to comply with Rule 50, to obtain a new trial, including situations where the evidence may be wholly insufficient to support the verdict, but the trial court cannot order judgment as a matter of law. Yeah, I saw that you quoted Wright and Miller. I just wanted to see if your counterpart had any authority to the contrary, since that wasn't a precedent. It was just a distinguished treatise. But they may cite some authority in there. Well, Linden from this case, I think. Pardon me? Linden on this court, I think, also says that. Apparently they're taking the position now that somehow there was no ‑‑ except that that's exactly contrary to the language of the swap, which made that acceleration optional, not mandatory. And their overall approach to this case just ignores the documents that they solemnly signed and executed with the advice of counsel, with the advice of MBAs, with the advice of CPAs and financial consultants. They just didn't pay the loan, and that triggered this whole situation, and it should have been resolved by the district court either on summary judgment or as a trier of fact. He's indicated his willingness to try it as a bench trial if there's a remand, and I think the court should take him up on that. Thank you very much. I'm curious. Do you recall if any witness testified as to why a bank might want to have a longer maturity on a swap agreement than the loan agreement? There was testimony from Mr. Hammond to that effect. In this case, it seems pretty clear that the HANA organization wanted to fix the interest rate for ‑‑ I mean a business reason for a bank. Well, yeah, if you're going to renew the loan. Pardon? If you think the loan is going to be renewed, you want to fix it for the renewal period, unfortunately. I mean, it is a standalone deal. A bank, I guess, could make a swap agreement for the fees, so to speak. That's right. A naked swap. Yeah. Not even connected to a loan. Right. Okay. Thank you. Thank you. Thank you. Your Honor, why not be allowed to cite the court as our authority? Pardon? Was our authority for the proposition that absent a 58‑month motion, we cannot recommend a new trial based on ‑‑ Why don't you put it in a 28‑J letter, and we'll take a look at it. Thank you very much. Thank you, counsel. The case has been thoroughly and well briefed and argued. Argument's been helpful. There is a cross appeal. It hasn't been talked about this morning, but it's preserved on the briefs, and we'll take that up as well as the main appeal. Case is submitted and taken under advisement.